BAY STATE-SPRAY & PROVINCETOWN STEAMSHIP, INC. *vs.*
CATERPILLAR TRACTOR CO.

Suffolk. November 9, 1988. — February 13, 1989.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Limitations, Statute of. Admiralty. Warranty. Sale*, Warranty. *Uniform
Commercial Code*, Warranty.

A claim of breach of warranty brought by the owner of a vessel to recover
   repair costs and lost profits was contract-based and was governed by
   the provisions of art. 2 of the Uniform Commercial Code (G. L. c. 106).
   [105]
Discussion of the nature of claims for breach of warranty under art. 2 of
   the Uniform Commercial Code that would determine whether G. L.
   c. 106, § 2-318, a three year statute of limitations measured from the
   date of injury, or G. L. c. 106, § 2-725, a four year statute of limitations
   measured from the date of delivery of the goods, is applicable. [105-110]
Where a claim for breach of warranty under art. 2 of the Uniform Commercial
   Code asserts a contract-based theory of liability seeking recovery for
   economic loss, the applicable statute of limitations is set forth in G. L.
   c. 106, § 2-725; where a breach of warranty claim is tort-based, seeking
   damages for physical injury, the appropriate statute of limitations is
   provided by G. L. c. 106, § 2-318. [110-111]
A contract-based claim of breach of warranty brought to recover economic
   losses resulting from the malfunction of a seagoing ferry's engine, occur-
   ring seven years after delivery of the vessel, was barred by the four year
   statute of limitations set forth in G. L. c. 106, § 2-725. [111]

CIVIL ACTION commenced in the Superior Court Department
on May 18, 1982.

The case was tried before *John C. Cratsley*, J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Thomas E. McDonald* (*Donald J. Wood* with him) for the
defendant.

*Gregory J. Wenger* for the plaintiff.

WILKINS, J. In 1972 the plaintiff (Steamship), which operates a passenger ferry service betweeen Boston and Provincetown, ordered the ship "Provincetown" built by a shipyard. The shipyard installed engines that had been manufactured by the defendant (Caterpillar). The ship began commercial operation in 1973. On August 17, 1980, while the ship was en route to Provincetown, its main starboard engine malfunctioned. As a result, the ship's operating schedule during the next month was disrupted. Steamship commenced this action in May, 1982, to recover damages for the cost of repair and for lost profits caused by the engine's malfunction. Damages of this type are generally characterized as economic loss. See *Marcil* v. *John Deere Indus. Equip. Co.*, 9 Mass. App. Ct. 625, 630 n.3 (1980); J.J. White & R.S. Summers, Uniform Commercial Code § 11-4, at 405 (1980).

At trial Caterpillar contended, among other things, that Steamship's claim was either (a) a tort-based admiralty claim in which economic loss is not recoverable or (b) a contract-based State law warranty action barred by the statute of limitations stated in § 2-725 of the Uniform Commercial Code (G. L. c. 106 [1986 ed.]). The judge denied Caterpillar's motion for a directed verdict and its motion for judgment notwithstanding the verdict, each of which was based in part on these theories. The jury returned a verdict for Steamship. We granted Caterpillar's application for direct appellate review.

After rejecting Caterpillar's argument that Steamship's claim is a tort claim in admiralty, we turn to the statute of limitations controversy. We must decide which of two statutes of limitation in the Uniform Commercial Code (either § 2-318 or § 2-725 of G. L. c. 106) applies in the circumstances. We conclude that the statute of limitations on which Caterpillar relies is the applicable one and that, therefore, Steamship's claim is barred. Our discussion will require an analysis of the unique Massachusetts treatment of G. L. c. 106, § 2-318, a provision in the sales section of the Uniform Commercial Code, which the Legislature has used to eliminate requirements of privity and to express new principles of strict liability for personal injuries and property damage caused by a seller's breach of warranty in the sale of a product.

1. Caterpillar argues that, to the extent that Steamship's claim is based in tort, it is governed by admiralty law, and that in admiralty economic loss, when it is the only loss, may not be recovered in a tort-based claim. Although Caterpillar is apparently correct in arguing that a plaintiff may not recover for economic loss in a tort-based products liability claim in admiralty (*East River S.S. Corp.* v. *Transamerica Delaval, Inc.*, 476 U.S. 858, 871 [1986]), Steamship's claim is not tort-based. It is a contract-based claim of breach of warranty and is outside admiralty jurisdiction. *Id.* at 872 n.7.[1] *Shipco 2295, Inc.* v. *Avondale Shipyards, Inc.*, 825 F.2d 925, 929 (5th Cir. 1987), cert. denied, 485 U.S. 1007 (1988). That is Steamship's view of its own claim. It was also the trial judge's view, and we agree with it. Caterpillar itself does not argue that we must view Steamship's claim as tort-based but only that, if we were to do so, recovery could not be had in admiralty. The Uniform Commercial Code - Sales G. L. c. 106, § 2-101 - § 2-725 [1986 ed.]) governs this case. The principal issue before us is, therefore, which of two arguably applicable statutes of limitation in art. 2 of the Massachusetts Uniform Commercial Code applies to the claim in this case.

2. The conflict between the statutes of limitation can easily be described. Section 2-318, which is set forth in the margin,[2]

---

[1] "If the charterers' claims were brought as breach-of-warranty actions, they would not be within the admiralty jurisdiction. Since contracts relating to the construction of or supply of materials to a ship are not within the admiralty jurisdiction, . . . neither are warranty claims grounded in such contracts. . . . State law would govern the actions. . . . In particular the Uniform Commercial Code, which has been adopted by 49 States, would apply." (Citations omitted.) *East River S.S. Corp.* v. *Transamerica Delaval, Inc.*, 476 U.S. 858, 871 (1986).

[2] Section 2-318 reads: "Lack of Privity in Actions Against a Manufacturer, Seller, Lessor or Supplier of Goods.

"Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer, seller, lessor or supplier of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant if the plaintiff was a person whom the manufacturer, seller, lessor or supplier might reasonably have expected to use, consume or be affected by the goods. The manufacturer, seller, lessor or supplier may not exclude

provides a three-year statute of limitations measured from the date the injury and damage occurs. The parties agree that the injury and damage occurred on August 17, 1980, when the allegedly defective engine malfunctioned. Steamship commenced this action in May, 1982. On the other hand, § 2-725, which is set forth in relevant part in the margin,[3] provides a four-year statute of limitations measured (as applicable in this case) from the tender of delivery of the goods, without regard to knowledge of the breach of warranty. Delivery occurred no later than 1973, approximately nine years before this action was commenced.

Each of the two statutes of limitation literally applies here. As to § 2-318, this is an action against a manufacturer for breach of an implied warranty, brought by a subsequent purchaser who would have reasonably been expected to use the engine. It was commenced within three years after "the injury and damage occurred." Thus, as Steamship argues, the action was timely. As to § 2-725, this is an action for breach of a contract of sale. The breach of warranty occurred no later than when the ship was delivered to Steamship, and the cause of action accrued when the breach occurred "regardless of the aggrieved party's lack of knowledge of the breach" (§ 2-725). Thus, as Caterpillar argues, the action was not commenced

---

or limit the operation of this section. Failure to give notice shall not bar recovery under this section unless the defendant proves that he was prejudiced thereby. All actions under this section shall be commenced within three years next after the date the injury and damage occurs."

[3] Section 2-725 reads in part: "Statute of Limitations in Contracts for Sale.

"(1) An action for breach of any contrract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

"(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."

within "four years after the cause of action accrued," and it may not be maintained.[4]

We resolve this conflict by analyzing the nature of Steamship's claim and determining what the Legislature intended to achieve by amendments to § 2-318. In so doing, we give meaning to each of the seemingly conflicting statutes of limitation. We conclude that the statute of limitations of § 2-318 applies to tort-based warranty claims and that the statute of limitations of § 2-725 applies to contract-based warranty claims. As we shall explain, there are meaningful differences between the two kinds of claims, and the Legislature inserted the statute of limitations in § 2-318 intending it to apply only to tort-based warranty claims.

A claim like Steamship's of a breach of an implied warranty asserted to recover economic loss (the cost of repairs and lost profits) is contract-based, and, in this State when economic loss is the only damage claimed, recovery is not allowed in tort-based strict liability (see Restatement [Second] of Torts § 402A [1965]) or in negligence. See *New England Power Co.* v. *Riley Stoker Corp.*, 20 Mass. App. Ct. 25, 35 (1985); *Marcil* v. *John Deere Indus. Equip. Co.*, 9 Mass. App. Ct. 625, 629-631 (1980).[5] In this respect Massachusetts joins the majority view in this country which is also the view favored by commentators. See *East River S.S. Corp.* v. *Transamerica Delaval, Inc.*, 476 U.S. 858, 868-869 (1986); *Spring Motors Distribs., Inc.* v. *Ford Motor Co.*, 98 N.J. 555, 573-575, 581

---

[4] Caterpillar does not argue that, even if its claim were asserted seasonably, as a remote purchaser (i.e., as one not in vertical privity), Steamship would not be entitled to recover on a timely asserted contract-based warranty claim. A plaintiff not in vertical privity is a buyer in the distributive chain who did not buy directly from the defendant. In comparison, a plaintiff not in horizontal privity is one who did not buy the goods within the distributive chain but consumes, uses, or is affected by them, such as a member of the buyer's family, J.J. White & R.S. Summers, Uniform Commercial Code § 11-2, at 399 (1980).

[5] We agree with the Appeals Court that this court's opinion in *Omni Flying Club, Inc.* v. *Cessna Aircraft Co.*, 366 Mass. 154, 162 (1974), should not be read to state a contrary rule. *Marcil* v. *John Deere Indus. Equip. Co.*, *supra* at 631 n.4. See *Wilson* v. *Hammer Holdings, Inc.*, 850 F.2d 3, 9 (1st Cir. 1988).

(1985); W.L. Prosser & W.P. Keeton, Torts § 657, at 708 (1984). What makes the Massachusetts situation unique (and our commercial code not uniform in this respect) is the Legislature's imposition of the concept of strict liability in tort into § 2-318 of the Uniform Commercial Code. Most jurisdictions have kept the two bases of liability separate, leaving for judicial determination the question of where a particular claim for damages falls — in tort or under a Uniform Commercial Code warranty. See, e.g., *Spring Motors Distribs., Inc.* v. *Ford Motor Co.*, *supra* at 577-582.

Tort concepts were introduced into G. L. c. 106, § 2-318, through amendments adopted well after the enactment of the Uniform Commercial Code in 1957.[6] In 1971 the Legislature greatly relaxed privity requirements in warranty actions and expressly referred to damages for "negligence" (as well as breach of warranty) in an amended § 2-318. St. 1971, c. 670.[7]

---

[6] As first appearing in this State (St. 1957, c. 765, § 1) § 2-318 provided:

"Third Party Beneficiaries of Warranties Express or Implied.

"A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section."

This "section eliminated the requirement of privity which was necessary for recovery under previous law but did so only for the limited class defined." *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 34 (1977). The provision affected the requirement of horizontal privity. It was "neutral . . . on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain," i.e., to those in vertical nonprivity. G. L. c. 106, § 2-318, comment 3, 621 (1984). See note 4, *supra*.

[7] Section 2-318, as amended by St. 1971, c. 670, read as follows:

"Lack of Privity in Actions Against a Manufacturer, Seller or Supplier of Goods.

"Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer, seller or supplier of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer, seller or supplier might reasonably have expected to use, consume or be affected by the goods. A manufacturer, seller or supplier may not exclude or limit the operation of this section."

The amendment further relaxed horizontal privity requirements. See note 4, *supra*.

In 1973 the Legislature inserted a statute of limitations in § 2-318 requiring an action to be commenced within two years after "the date the *injury* occurs" (emphasis supplied). St. 1973, c. 750, § 1. The act stated that the amendment applied "to *injuries* which occur" (emphasis supplied) after the effective date of the amendment. St. 1973, c. 750, § 2. The two-year limitation generally paralleled the tort statutes of limitation then in effect. See G. L. c. 260, § 2A, inserted by St. 1948, c. 274, § 2; G. L. c. 260, § 4, as amended through St. 1968, c. 94, § 1. This amendment to § 2-318 by its terms focused on tort-based claims for personal injuries. In 1974, the statute of limitations was extended to three years ("shall be commenced within three years next after the date the injury and damage occurs"). St. 1974, c. 750. Section 2-318 was thus again made to parallel the tort statutes of limitation. G. L. c. 260, §§ 2A and 4, as amended by St. 1973, c. 777, §§ 1 and 3. See *Swartz* v. *General Motors Corp.*, 375 Mass. 628, 630 (1978). We observed in 1978 that these amendments, taken together, provided "a remedy as comprehensive as that [strict liability] provided by § 402A of the Restatement" (Second) of Torts (1965). *Id.* See *Back* v. *Wickes Corp.*, 375 Mass. 633, 639-640 (1978). Although we declined to recognize a common law tort basis of strict liability based on the principles of § 402A (*Swartz* v. *General Motors Corp., supra* at 631), we recognized "that the duty which [a] plaintiff sues to enforce in a 'warranty' action for personal injuries is one imposed by law as a matter of social policy," a tort concept. *Back* v. *Wickes Corp., supra* at 640.

The Supreme Court's opinion in the *East River* case, which has already provided the clear answer to the admiralty question in this case, sets forth strong reasons for recognizing a meaningful distinction between tort recovery for physical injuries and warranty recovery for economic loss. *East River S.S. Corp.* v. *Transamerica Delaval, Inc.*, 476 U.S. 858, 871-875 (1986). "When a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong." *Id.* at 871. The commercial user can protect himself by seeking express contractual assur-

ances concerning the product (and thereby perhaps paying more for the product) or by obtaining insurance against losses. A person physically injured by a defective product generally had neither the bargaining power nor the opportunity to bargain with its manufacturer or seller and so could not reasonably provide himself with the same kind of protection that a purchaser of goods could. There is, therefore, a greater justification for placing responsibility on a manufacturer for physical injuries caused by a product not meeting standards imposed by the law than there is in placing broad liability on the manufacturer for economic loss to the product's owner resulting from a defect in the product.

The appropriate statute of limitations to apply to a breach of warranty claim under art. 2 of the Uniform Commercial Code is found by determining the nature of that particular breach of warranty claim. If, as is the case here, the claim asserts a contract-based theory of liability, § 2-725 (not § 2-318) furnishes the applicable statute of limitations. See *Wilson* v. *Hammer Holdings, Inc.,* 850 F.2d 3, 7-8 (1st Cir. 1988) (stating correctly, as to Massachusetts law, "that section 2-318 is designed to cover breach of warranty actions that are in essence products liability actions, and is not designed as an alternative for contractually based warranty claims").

The idea that the substance of a warranty claim should be analyzed in order to determine the rights of parties is not new. See *Fernandes* v. *Union Bookbinding Co.,* 400 Mass. 27, 39 (1987) (damage for loss of consortium recoverable in breach of implied warranty claim where husband-father sustained personal injury); *Wolfe* v. *Ford Motor Co.,* 386 Mass. 95, 100 (1982) (defendant liable in negligence may obtain contribution from defendant liable for breach of warranty for same injuries). "[W]e find no magic in the label 'warranty' but rather we look to the substantive quality of the claims against [the defendant]." *Id.*

Beyond the seeming logic of applying the contract-based warranty statute of limitations of § 2-725 to this case, rather than the tort-based warranty statute of limitations of § 2-318, is the practical consideration that a contrary approach produces

an illogical result. If the tort-based rule of § 2-318 were to apply to a claim such as Steamship's (three years from "the date the injury occurs"), a subsequent purchaser could recover for economic loss occurring years after the allegedly defective product left the manufacturer's control, while under § 2-725 an original purchaser would be entitled to recovery only for economic loss caused by a defect uncovered during the four years after the sale.[8]

To apply § 2-725's statute of limitations provision to contract-based breach of warranty claims gives that provision its original meaning. To apply § 2-318's statute of limitations to tort-based breach of warranty actions carries out the intention underlying the amendments to § 2-318. Steamship's is a contract-based breach of warranty claim. It is barred by § 2-725.

The judgment is reversed. The case is remanded for entry of judgment for the defendant Caterpillar Tractor Company.

*So ordered.*

---

[8] Steamship is wrong in suggesting that, in the circumstances of this case, an original owner could have rights equivalent to a subsequent purchaser by exercising the right to revoke acceptance of a product. G. L. c. 106, § 2-608. It would be too late to do so. "Revocation of acceptance must occur within a reasonable time . . . before any substantial change in the condition of the goods which is not caused by their own defects." G. L. c. 106, § 2-608 (2). See *Euroworld of Cal. Inc.* v. *Blakey,* 613 F. Supp. 129, 134 (S.D. Fla. 1985) (failure by buyer to notify seller of problems with engines until nine months after delivery not timely and therefore not effective revocation under § 2-608); *Fargo Mach. & Tool Co.* v. *Kearney & Trecker Corp.,* 428 F. Supp. 364, 380-381 (E.D. Mich. 1977) (buyer's use of machine for five and one-half years constituted a substantial change in the condition of the goods, precluding revocation under § 2-608 [2]).

We would also reject any suggestion that the statute of limitations of § 2-318 would apply to an original purchaser's contract-based claim for economic loss as well. To so rule would mean that the insertion of the statute of limitations in § 2-318 impliedly amended, almost to extinction, the statute of limitations of § 2-725. In such a view, the statute of limitations of § 2-725 would have significance only as to an action brought in the fourth year after the sale. The conclusion that there was an almost total implied repeal of the statute of limitations of § 2-725 by the amendment of § 2-318 is not easily acceptable.