Wexler, James H., J.
INTRODUCTION
Plaintiff, Pro Con, Inc. (“Pro Con”), brought this action alleging a variety of tort, warranty and contract claims against Parex, Inc. (“Parex”) and other named defendants. Pro Con specifically seeks to recover damages associated with alleged construction and product defects in connection with the construction of a hotel. Parex filed a Motion for Partial Summary Judgment on Counts XXII (Negligence) and XXIV (Contribution) asserting that the Massachusetts economic loss doctrine precludes Pro Con from recovering in tort. For the following reasons, the defendant’s motion is ALLOWED.
BACKGROUND
Plaintiff, Pro Con, is a construction contractor with a principal place of business in Hooksett, New Hampshire. Pro Con specializes in institutional, multi-family residential, and commercial projects in New England. On November 26, 1996, Pro Con entered into a con *479 tract with Interstone Partners I, L.P. to construct a Courtyard by Marriott hotel in Westborough, Massachusetts (“the Hotel”). Thereafter, Pro Con entered into a subcontract with J&B Diywall (“J&B”) to apply an exterior insulating and finish system (“EIFS”) and sealant to the exterior of the Hotel. The EIFS and sealant J&B applied to the Hotel were manufactured by Parex. J&B employees completed a Parex Training Seminar and had demonstrated the ability to properly apply the EIFS to the Hotel during its construction.
The Hotel is a three-stoiy, ninety-eight-unit, wood-framed structure made of oriented strand board (“OSB”) exterior sheathing. The OSB exists under the EIFS and was sealed with a polyurethane sealant. The EIFS applied to the Hotel was a standard barrier EIFS product consisting of various components, including: adhesive, insulation board, base coat, reinforcing fiberglass mesh, finish coat and additional accessories. These components were applied over the Hotel’s OSB and became an integral component of the Hotel’s wall system.
In 2002, the Hotel’s owner informed Pro Con that water had infiltrated through the Hotel’s exterior and caused extensive property damage. Part of the property damage stemmed from water draining into the walls through the allegedly defective application of the EIFS system and sealant. Pro Con subsequently settled with the Hotel’s owner and now seeks tort recovery for the alleged defects from Parex.
DISCUSSION
Summary Judgment Standard
Summary judgment shall be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.RCiv.P. 56(c); Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
The non-moving party cannot conjure up genuine issues of material fact or merely rely on the allegations or denials of her pleading. See Mass.R.Civ.P. 56(e). Conclusory statements, general denials, and allegations not based on personal knowledge are insufficient to avoid summary judgment. Madsen v. Erwin, 395 Mass. 715, 721 (1985). Rather, the non-moving party bears the burden of introducing enough countervailing data to demonstrate the existence of a genuine issue for trial. See Wooster v. Abdow Corp., 46 Mass.App.Ct. 665, 673 (1999).
Economic Loss Doctrine
Under Massachusetts law, the economic loss doctrine provides that purely economic losses are not recoverable in tort actions in the absence of personal injury or damage to property other than the product itself. See Jacobs v. Yamaha Motor Corp., USA, 420 Mass. 323, 329 n.5 (1995); FMR Corp. v. Boston Edison Co., 415 Mass. 393, 395 (1993); East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 871-75 (1986). Massachusetts courts have defined economic loss as “damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits without any claim of personal injury or damage to other property.” Marcil v. John Deere Indus. Equip. Co., 9 Mass.App.Ct. 625, 630 n.3 (1980).
The rationale underlying the economic loss doctrine is that when a commercial product fails without harming persons or other property, “the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain - traditionally the core concern of contract law.” East River, 476 U.S. at 870. When the product injures only itself, such contractual losses can be minimized by insurance or warranties. See Bay State-Spray & Provincetown S.S., Inc. v. Caterpillar Tractor Co., 404 Mass. 103, 109-10 (1989). However, when the failure of a defective product causes damages to a person or other property, the economic loss doctrine does not apply and the damage claim sounds in tort. See Aldrich v. ADD, Inc., 437 Mass. 213, 222 (2002) (“[W]here the pecuniary losses sustained by a plaintiff result form physical harm to property proximately caused by a defendant’s alleged negligence, such plaintiff has a right to recovery”). Instead, “(w]hen a person is injured, the ‘cost of an injury and the loss of time or health may be an overwhelming misfortune,’ and one the person is not prepared to meet.” East River, 476 U.S. at 871-72 (internal citations omitted). Thus, tort recourse is appropriate because the resulting injury occurs outside the scope of the underlying contract. Id
In claims involving defective component parts, most courts have held that the relevant “product" is the finished product into which the component is integrated.[3] See, e.g., East River, 476 U.S. at 867-68 (stating in admiralty law that “(s]ince all but the very simplest of machines have component parts, [a contrary] holding would require a finding of ‘property damage’ in vitally every case where a product damages itself. . . and would eliminate the distinction between warranty and strict products liability”); King v. HiltonDavis, 855 F.2d 1047, 1051 (3rd Cir. 1988) (no recovery for damage caused by chemical to seed potatoes because plaintiffs purchased treated seed potatoes, not chemical); Chicago Heights Venture v. Dynamit Nobel of America Inc., 782 F.2d 723 (7th Cir. 1986) (economic loss doctrine precluded tort recovery of damages caused to exterior and interior of apartment building by allegedly *480 defective roofing materials); American Horne Assurance Co. v. Major Tool and Mach., Inc., 767 F.2d 446, 447-48 (8th Cir. 1985) (turbine assembler could not recover in tort from manufacturer of defective component parts because damage from those defective parts to remainder of turbine was not damage to other property). Therefore, where a component is necessarily attached to a structure and the alleged defect causes damage only to surrounding parts of that structure, the economic loss doctrine applies. Chicago Heights Venture, 782 F.2d at 729.
These courts reasoned that the finished product incorporates its individual components because what the plaintiff actually bargains for is the final product. See ,e.g., Oceanside at Pine Point Condominium Owners Ass’n. v. Peachtree Doors, Inc., 659 A.2d 267, 270 (Me. 1995) (no recovery for building damage caused by defective windows because plaintiff owners purchased completed condominium units and not windows); King, 855 F.2d at 1051 (“We perceive no principled basis for affording the purchaser of a defective product greater relief against the manufacturer of a component part that has rendered a product defective than against the manufacturer of the assembled defective product”); Shipco 2295, Inc. v. Avondale Shipyards, Inc., 825 F.2d 925, 930 (5th Cir. 1987) (in the context of tort for economic loss, product means the finished product bargained for by the purchaser). Therefore, purely economic losses attributed to the final product bargained for in a contract preclude tort liability. See Oceanside, King, Shipco 2295, Inc., Chicago Heights Venture (citations omitted).
Here, plaintiff argues that defendant is liable for water damage that occurred to the Hotel. Specifically, Pro Con asserts that Parex’s EIFS product and sealant was defective and allowed water to penetrate past the underlying OSB substrate and wooden studs on the Hotel’s walls. Therefore, Pro Con contends that the economic loss doctrine does not apply because the EIFS caused “other property” damage to the OSB substrate and wooden studs of the Hotel’s wall structure. Defendant argues that the economic loss doctrine bars Pro Con from recovering under a negligence theory because the underlying contract was for the construction of a hotel, not the EIFS product itself. Instead, Parex asserts that the EIFS and sealant were component parts of the Hotel’s wall foundation, and because the only damage that occurred was to the Hotel itself, Pro Con is barred from recovering in tort.
The court finds defendant’s argument persuasive to preclude tort liability against it. As stated by the United States Supreme Court in East River, “(pjermitting recovery for all foreseeable claims for purely economic loss could make a manufacturer liable for vast sums. It would be difficult for a manufacturer to take into account the expectations of persons downstream who may encounter its product.” 476 U.S. at 874. Moreover, to extend the scope of tort liability to include components of a finished product would significantly undermine contract law because warranting one’s product would no longer be necessary. Id. at 871-73; Bay State Spray, 404 Mass. 109-10. Instead, tort law would swallow contract law because whenever an individual component damaged anything other than itself (i.e., other components to the finished product, the finished product as a whole, a person, or other property), the manufacturer would be liable. See East River, Oceanside, King, Shipco 2295, Inc., Chicago Heights Venture, (citations omitted). Here, the underlying basis of the bargain was the construction of a hotel, not the use of EIFS and sealant by themselves. The warranties in use of the EIFS and sealant to the OSB to build the Hotel’s infrastructure were an essential basis of the underlying bargain in the Hotel’s construction. As such, no damage to “other property” occurred that would warrant a finding of tort liability.
Contribution
Massachusetts law recognizes a right to contribution among joint tortfeasors. See G.L.c. 231B, §1. Thus, “where two or more persons become jointly liable in tort for the same injury to person or property, there shall be a right of contribution among them.” Id. However, where an alleged joint tortfeasor would not be liable to the plaintiff, the joint tortfeasor is not liable in contribution. See Correia v. Firestone Tire & Rubber Co., 388 Mass. 342, 346 (1983) (contribution barred where plaintiffs claim against joint tortfeasor would be barred by workers’ compensation statute). Dighton v. Federal Pac. Elec. Co., 399 Mass. 687, 691-93 (1987) (joint tortfeasor protected from plaintiffs suit by statute of repose and not liable for contribution).
The court finds that because Parex was not liable as a joint tortfeasor for the underlying negligence claims, plaintiffs theory of contribution also fails. See Correia Dighton (citations omitted).
ORDER
For the reasons stated herein, it is hereby ordered that defendant’s Motion for Partial Summary Judgment pursuant to Mass.R.Civ.P. 56 as to both Counts is ALLOWED.

 The court notes that Sebago, Inc. v. Manville Corp., 18 F.Sup.2d 70 (D.Mass. 1998), is particularly on point with the facts in the case at bar. There, plaintiffs were precluded by the economic loss doctrine from recovering in negligence and strict liability against the manufacturer of a roofing component. Like Pro Con here, the Sebago plaintiffs argued that the product they purchased was the roofing component itself (i.e., phenolic foam roof insulation, or “PFRI”), and not the fully constructed rooftop in an attempt to circumvent the economic loss doctrine. Relying on secondary sources, the district court found the Sebago plaintiffs argument unpersuasive because the only property damaged was the roof itself. Therefore tort recovery was precluded since the basis of the underlying bargain was the roof and no “other property” was damaged.