**Mark PRATT, Easter Redman, Ethel Washington and Barbara Moore, Plaintiffs,**

**v.**

**The CHICAGO HOUSING AUTHORITY, Defendant.**

**and**

**Everett Alexander, Mary Baldwin, Deverra Beverly, Mamie Bone, Louis Brown, Hattie Calvin, Annie Davis, Beverly Dorsey, Helen Finner, Beatrice Harris, Myra King, Jerome Price, Artensa Randolph, Charles Reynolds, Dorothy Shelton, Esther Wheeler, Gloria Williams, Julia Wimms, Defendant–Intervenors.**

No. 93 C 6985.

United States District Court, N.D. Illinois, Eastern Division.

April 14, 1994.

Harvey Grossman, Patricia Mendoza, and Rocio L. Cordoba, the Roger Baldwin Foundation of ACLU, Inc., Chicago, IL.

James J. Casey and Bradford T. Yaker, Keck Mahin & Cate, Chicago, IL.

Sharon A. Wildey, Sharon A. Wildey & Associates, Chicago, IL.

Edward W. Feldman and James P. Bailinson, Miller, Shakman, Hamilton, Kurtzon and Schlifke, Chicago, IL.

Thomas P. Sullivan and Michael R. Pace, Jenner & Block, Chicago, IL.

## MEMORANDUM, OPINION AND ORDER

ANDERSEN, District Judge.

Defendant-intervenors seek to de-certify the class action brought by plaintiffs Mark Pratt, Easter Redman, Ethel Washington and Barbara Moore on behalf of all tenants and residents of the Chicago Housing Authority ("CHA"). The basis of the de-certification motion is that the named plaintiffs are unable to adequately represent all class members as required by Fed.R.Civ.P. 23. For the following reasons, intervenors' motion is granted.

### FACTS

Plaintiffs Mark Pratt, Easter Redman, Ethel Washington and Barbara Moore brought this action on behalf of all tenants and lawful residents of property owned and operated by defendant CHA. Plaintiffs' complaint is a civil rights action for declaratory and injunctive relief arising under 42 U.S.C. §§ 1983, 1988 and 28 U.S.C. §§ 2201, et seq. The complaint alleges that the defendant violated the rights of residents guaranteed by the Fourth and Fourteenth Amendments of the Constitution of the United States.

The plaintiffs' claims are based on the CHA Search Policy that authorizes warrantless searches of CHA residents' homes when certain preconditions exist. Those preconditions include random gunfire from building to building and/or intimidation at gunpoint or by shooting if weapons were taken into buildings. If CHA police officers could not ascertain into which apartments weapons had been taken, they would search all residential units located within the buildings.

These "sweeps" were conducted by searching entire apartment units, including closets, drawers, refrigerators, cabinets and personal effects. The normal procedure of obtaining search warrants from a judge was not at-tempted, so all searches were without court sanction. The sweeps themselves, due to the logistical difficulties of coordinating sufficient police to search properly, normally took place several days after the emergency circumstances arose and never occurred earlier than forty-eight hours after the alleged criminal activity. Although the CHA obtained consent to search from many tenants, it concedes that consent was not obtained from some tenants, such as those who were not home when the searches occurred. Pursuant to the plaintiffs' claims, a preliminary injunction was issued on April 7, 1994 enjoining the CHA Search Policy. Plaintiffs sought and obtained class certification pursuant to Fed. R.Civ.P. 23(b)(2) for named plaintiffs and all tenants and lawful residents of property owned and operated by the CHA. Defendant-intervenors now seek to de-certify this class based on intra-class conflict.

Defendant-intervenors are CHA residents who are Local Advisory Council ("LAC") Presidents for eighteen of the nineteen CHA developments and who contend that the CHA's policy and practice as described in the complaint does not violate the Fourth Amendment. Each CHA development has a LAC and LAC members and presidents are elected by each development's residents. The LAC Presidents, in turn, comprise the CHA Central Advisory Council ("CAC"), representing CHA residents from all CHA developments. The CAC adopted a resolution on February 14, 1994 indicating its official support for the CHA's searches and sweeps and authorizing the representation of counsel to pursue the intervenors' interest in this case.

In addition to the CAC resolution, intervenors introduced evidence that many residents oppose plaintiffs' action and their inclusion in the class. Specifically, petitions purportedly signed by over 5,000 CHA residents state:

> We strongly support the efforts of the [CHA] to improve our safety, including searches of units for guns, installation of metal detectors at entrances, and use of photo identification cards for admission to a CHA building.

> We oppose the efforts of outside groups who have gone to court seeking to prevent

the CHA from taking the steps needed to protect our safety. . . .

Based on substantial resident opposition, LAC President opposition, and the CAC resolution supporting the Search Policy, intervenors have moved to de-certify the plaintiffs' class.

## DISCUSSION

■ The plaintiffs' class was certified pursuant to Fed.R.Civ.P. 23(b)(2). A court has broad discretion to determine whether certification of a class is appropriate. *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993). "[T]he party seeking class certification assumes the burden of demonstrating that certification is appropriate." *Id.; Trotter v. Klincar,* 748 F.2d 1177, 1184 (7th Cir.1984). Under the federal rules, the plaintiffs must show that the four requirements of Rule 23(a) are met and that one section of Rule 23(b) is satisfied.

Rule 23 provides, in pertinent part:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . . . .

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;

. . . .

The intervenors' primary argument is that the plaintiffs have failed to meet the 23(a)(4) adequacy of representation requirements.

■ In order to certify a class, a court must find that the named plaintiffs will fairly and adequately protect the interests of the class. "Basic considerations of fairness require that a court undertake a stringent and continuing examination of the adequacy of representation by the named class representatives at all stages of the litigation where absent members will be bound by the court's judgment." *Susman v. Lincoln American Corp.,* 561 F.2d 86, 89–90 (7th Cir.1977) (quoting *National Association of Regional Medical Programs v. Mathews,* 551 F.2d 340, 344–45 (D.C.Cir.1976), *cert. denied,* 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977)).

■ The test for adequate representation is two fold: 1) the plaintiffs' attorney must be qualified and experienced; and 2) the plaintiffs' attorney must adequately protect the " 'different, separate, and distinct interest[s]' of the class members." *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 598 (7th Cir.1993) (quoting *Secretary of Labor v. Fitzsimmons,* 805 F.2d 682, 697 (7th Cir.1986)) (en banc). A class cannot be fairly or adequately represented if class members have antagonistic or conflicting claims. *Id.* This requirement becomes especially important when certification pursuant to Rule 23(b)(2) is sought because absent members may not opt out of the class. *Perez–Funez v. District Director, Immigration and Naturalization Service, David Crosland,* 611 F.Supp. 990, 997 (C.D.Cal.1984).

Intervenors do not question the quality, experience or ability of plaintiffs' attorneys. Plaintiffs' attorneys have demonstrated their formidable skills through efficient and effective representation, thereby satisfying the first prong of the test.

■ Intervenors claim that antagonism within the class prevents plaintiffs from satisfying the second prong of the test. Plaintiffs assert that class members' disagreement over the constitutionality of the Search Policy is irrelevant and that some class members' opposition to plaintiffs' suit is not the type of intra-class conflict sufficient to defeat class certification. Plaintiffs cite *Horton v. Goose Creek Independent School District,* 690 F.2d 470 (5th Cir.1982) for the proposition that the dissent of some class members is immaterial

since their position is being asserted by the defendants. Specifically, plaintiffs claim that *Horton* permits certification of a class, despite intra-class conflict, so long as the opposing party represents the interests of the dissenters.

In *Horton*, however, there existed only a "possibility" of antagonism within the class. *Id.* at 485. In the instant case, there is a prominent and vigorous dissent within the class. Eighteen of the nineteen LAC Presidents support the Search Policy and object to being included in the class. Moreover, these eighteen LAC Presidents are defendant-intervenors who assert that the Search Policy does not violate their constitutional rights. Defendant-intervenors introduced petitions indicating that approximately 5,000 other residents support the Search Policy and oppose inclusion in the class. Conversely, plaintiffs have stated that their "primary interest is to halt the Policy." (Mem. in Support of Plaintiffs' Motion to Maintain a Class Action, p. 7).

The Supreme Court has noted that certifying a class represented by a party "whose substantial interests are not necessarily or even probably the same as those whom they are deemed to represent, does not afford that protection to absent parties which due process requires." *Hansberry v. Lee,* 311 U.S. 32, 45, 61 S.Ct. 115, 119–20, 85 L.Ed. 22 (1940). Accordingly, the class representatives in this case cannot be deemed to fairly and adequately protect the interests of the class and de-certification is appropriate.

Despite the de-certification of the class, the preliminary injunction nevertheless prevents warrantless, non-consensual searches of the homes of CHA residents. Any resident remains free to consent to or refuse any such searches. Many courts have held that certification of a class is not necessary when the injunctive relief sought by an individual plaintiff will automatically inure to the benefit of all potential class members. *See, e.g., James v. Ball,* 613 F.2d 180, 186 (9th Cir. 1979), *rev'd on other grounds,* 451 U.S. 355, 101 S.Ct. 1811, 68 L.Ed.2d 150 (1981); *Davis v. Smith,* 607 F.2d 535, 540 (2d Cir.1978); *Sandford v. R.L. Coleman Realty Co.,* 573 F.2d 173, 178 (4th Cir.1978). In the present case, however, the inability of the named plaintiffs to adequately represent the interests of all residents renders de-certification of the class appropriate.

### CONCLUSION

For the foregoing reasons, defendant-intervenors' motion to de-certify the class action is granted.